Ruffin, C. J.
 

 The deed to the defendant was, the Court thinks, properly excluded. As creditors and purchasers are not parties to the controversy, but only those who are party and privy to the instrument, the old cases would have allowed it to be proved on the trial, as a conveyance at common law and read, without reference to its attestation, probate and registration, under the acts of 1784, 1789 and 1792.
 
 Cutlar
 
 v.
 
 Spiller, 2
 
 Hay. 61.—
 
 Rhodes
 
 v.
 
 Holmes, 2
 
 Hawks. 193. But the Court does not further consider that point, as it was not raised on the trial, and the defendant insisted, on the contrary, that
 
 *310
 
 he was entitled, under the statute,
 
 to
 
 read the deed on the probate and registration appearing on it, without further proof of its execution. Rev. Stat. ch. 37, sec. 21. But that depends upon the question, whether there has been that due probate and registration, which the act meant, and the Court is of opinion, there has not. The case •that occurred is not expressly provided for in the act.— But there is no hesitation in holding, that a deed for land and slaves would not be avoided by the accidental circumstance of the death of the subscribing witness and of the maker, whereby it could not beregisteredupon proof by the one or acknowledgment by the other. In such a case, we hold that recourse may be had to the common law mode of proof for the purpose of registration, as for ’the purpose of making the deed evidence at common law generally. But it would follow, «that, in such cases, the party would be under the necessity of giving-similar evidence of the execution on the trial, since it is clear, that the provision of the act, which dispenses with the subscribing witness upon the trial, and admits the deed on its probate and registration, supposes the probate and registration, thus received, to have been upon the evidence of that witness or the acknowledgement of the party or in some other way specified by the statute. In the present case no such proof was offered on the trial: nor, in the opinion of the Court, was proper and sufficient evidence given, to authorize the o.rder for registration. The case of
 
 Horton
 
 v.
 
 Hagley,
 
 1 Hawks. 48, shows that point to be open, when the instrument is offered to support a title and the defect of the evidence appears in the probate itself. The Court does not concur in one of the objections taken to the probate by the counsel for the plaintiff, that there ought to have been proof of the mark being in the hand of the witness, or at the least, affirmative evidence, that the defendant endeavored and failed to get proof to the mark, as being that of the witness.—
 
 *311
 
 For, although in some very extraordinary instances, the mark of an illiterate person may become so well known, as tobe susceptible of proof, like hand-writing.yet, generally, a mark, a mére cross, cannot be identified, and, therefore, ^n?na
 
 facie,
 
 it stands
 
 perse
 
 upon the same reason with the case, in which the party, after due enquiry, has been unable to prove the signature of the person, who, upon the face of the instrument appears to have written his name as subscribing witness — in which case) the instrument may be read upon proof of the hand-writing of the party.
 
 McKinder
 
 v.
 
 Littlejohn,
 
 1st Ire. 66.—
 
 Jones
 
 v.
 
 Blount,
 
 1st Hay. 238. But the other objection, that the proof ofthe grantor's hand writing was defective, and, so, did not authorize the order for registration, the Court deems well founded. The witness deposed in general terms, that the signature of Jonathan Hampton was in the hand-writing of that person; but he did not state, upon what grounds he formed his opinion, nor by what means he had acquired a knowledge of the hand-writing of the party ; and consequently it does not appear that his means of information were such, as to render his opinion admissible.
 
 Pope
 
 v. Askew, 1 Ire. 17. Jackson
 
 v. Waldron,
 
 13 Wend. 178. Upon the other point, as to the competency of the sons of the intestate, the opinion of the Court differs from that of his Honor.— It is trues the creditor, who sued the administrator, could not, in any proceeding of his own, directly against the administrator, either in law or in equity, reach personal assets subsequently received by the administrator.
 
 Miller
 
 v. Spencer, 2 Mur. 281.
 
 Martin
 
 v.
 
 Harding,
 
 3 Ire. Eq. 603. But that arises from the forms of the pleadings and judgment, and the conclusiveness, belonging to the adjudication of ail tribunals, upon matters within their jurisdiction, when the same matters come up a second time between the same parties. But the same operation is not given to a judgment against third persons generally ; and
 
 *312
 
 the statute enacts in the particular case of creditor, executor and heir, that execution may go against the estate of the heir upon a judgment in a suit against the executor, provided the executor has fully administered or hath not personal assets; and it enacts further, that at the election of the heir, a finding in the first suit of fully administered and want of assets shall not bind the heir nor even the creditor, and enables the heir, on the
 
 scieri facias
 
 of the creditor, to take a new issue upon the question of assets with the executor, who is kept in Court for that purpose. That is a collateral issue, and the creditor stands by, awaiting the' result, for the sake of the right of the other parties, as between themselves; for the law supposes the creditor is to be paid, at all events, by the one side or the other, which ever has the estate of the debtor, that is then chargeable"; and, to that end, if the issue be found against the executor, it gives the creditor execution
 
 de bonis testatoris et de bonis propriis.
 
 It is apparent, that, through the rights of the heir, the creditor may thus have satisfaction from the personal estate or the executor, when, of himself, he could not get at either. Although those provisions of the law, were, doubtless, designed chiefly, if not entirely, for the protection of the heir, yet, the creditor also derives, incidentally, a benefit from them. ■ That benefit and protection are necessarily co-extensive; and as far as the heir can show assets in the hands of the executor, the creditor is turned over to him, and the land of the heir is,
 
 pro tanto,
 
 exonerated. — 5 That was admitted in the argument to be true, in respect to such personal assets, as the heir may shew the executor to have been liable for, at the time the executor plead, ed originally; making the issue between the heir and the executor relate back to that between the creditor and the executor. But, as the Court conceives, that limits the issue too straitly, and is opposed to both the words and the reason of the law. As the heir has no interest in the
 
 *313
 
 question of assets, save only to protect his own inheritance, it is to be presumed from his tendering an issue, that he has real assets, and therefore, that the creditor will obtain satisfaction, at least, to some extent. If, thenf the collateral issue relates to the executor’s plea, the consequence would be, that the heir’s land might be sold under the judgment, while the executor had- ample assets, received, indeed, after he had pleaded or after judgment in the action-against him. That, unquestionably, is contrary to the policy of the law. and, we think, the construction of the statute. The law does not mean the land of the heir to be taken upon judgment on a
 
 scire
 
 facias, if there be personal assets, with wh-ieb the debt ought to be discharged, at the time payment is demanded of the heir
 
 %
 
 for, the very purpose is to save the land of the heir, and it ought to be done, if practicable, and without reference to-the ability or inability of the executor to pay the debt at any previous period, provided he then- have the means» If the heir and the next of kin or legatee, entitled to the personalty, be the same person, the law could never intend, that the executor, upon a technical rule of pleading.-, affecting him and the creditor, should be enabled to-withhold the personal estate belonging to this person as next of kin- and thereby deprive him of his inheritance. If, ore the contrary, different persons fill those characters, it i» manifestly unjust, that the property of one should be taken to pay the debt of the other ; and, that, too, when it may "be conveniently ascertained, in a pending, proceeding, out of which property of the two', it ought to be paid. It is true, Indeed,, that this enquiry cannot be brought down to the day of trial', but, by the forms of judicial proceedings, is stopped by the tender of the issue by the heir. Up to that time, however, the purposes of the law require, that the heir shall be allow'ed to call the executor to account» Hence the statute is, not only that “the heir shall be at liberty to contest the truth of the finding of the issue in.
 
 *314
 
 favour of the executor,” but he may thus contest its truth by'a “plea, that the executor
 
 hath
 
 sufficient assets or
 
 hath
 
 wasted the same.” It was, therefore, erroneous to suppose, that the issue is as to the truth of the administra, tor’s plea, that he then had no assets. In reality, however, that distinction is not material to the question of the competency of the heir, as a witness, for his ancestor’s administrator, in a suit for property alleged to belong to the intestate; for, unquestionably, the heir would be entitled to satisfaction out of the personalty, no matter when received, for money raised by legal process out of his land, although the creditor to whom the money was paid had lost his remedy against the executor. However it may be, between the creditor and the personal estate, that estate must certainly exonerate the real estate or reimburse to it all sums, which it was compelled to pay to creditors, and it is a common equity to give relief in such cases.— Therefore although the witness might not be able to charge the administrator upon a collateral issue with these slaves, as they have never been in his possession, and he has. hitherto, been unable to recover them, yet, if he should hereafter do so, they can insist on the return thereout of the money, raised out of their land or paid by them in respect of it, and, therefore, it is not competent to them to give evidence, that the property was in their ancestor. The releases, given by them, make no difference, as they give up only their distributive shares as next of kin, and their right, which we have been considering, is as heirs at law, ai^d distinct from the other. Neither is their liability or recourse ever affected by their sales of the land; for, the statute makes them answerable for debts, as the land itself would have been, to the value of it, and without any regard to the sale being with or without warranty.
 

 Ter Cvriam. Judgment reversed and
 
 venire de novo.